Beatriz Jose DRAGON, aka Barbara J. Cunningham, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 83–7338.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 12, 1984.

Decided Dec. 3, 1984.

Robert S. Bixby, Fallon, Hargreaves, Bixby, & McVey, San Francisco, Cal., for petitioner.

Mark C. Walters, Immigration Litigation, Washington, D.C., for respondent.

Before PHILLIPS,* FLETCHER, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Dragon petitions for review of the decisions of the Board of Immigration Appeals (BIA) denying her application for permission to reapply *nunc pro tunc* for admission into the United States and her motion to reopen deportation proceedings. For the reasons stated below, we reverse and remand for further proceedings.

## I

Beatriz Jose Dragon is a 35-year old native and citizen of the Philippines. She first entered the United States in 1969 as a visitor and later changed her status to spouse of a nonimmigrant student.[1] On May 15, 1974, an Immigration Judge found her deportable for staying in the United States longer than authorized and granted Dragon 30 days voluntary departure June 15, 1974. ... of voluntary

One day before her ... Dragon married departure was to ex... United States citizen. Wilfred Dragon. ... on June 19, 1974, she returned to ... Philippines. Her husband filed ... immediate relative visa petition on her ... behalf, and she reentered the country as the wife of a United States citizen on September 6, 1975.

■ On April 9, 1976, the INS initiated deportation proceedings against Dragon,

* Hon. Harry Phillips, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

1. At the time of her entry, Dragon was married to Jose Sugay, a native and citizen of the Philippines, who was in the United States as a nonimmigrant student. They were divorced in April, 1973.

charging that her marriage to Wilfred Dragon was a sham and that her 1975 reentry into the United States was therefore illegal. *See* 8 U.S.C. §§ 1251(a)(1), 1182(a)(14), (20) (1982). At the deportation hearing, the INS further claimed that Dragon was deportable because her 1975 reentry into the United States was without the permission of the Attorney General. The basis of the added charge was that Dragon's previous departure from the United States four days after her 1974 grant of voluntary departure expired resulted in self-deportation, *see* 8 C.F.R. § 243.5 (1984), and she was therefore required to obtain the permission of the Attorney General in order to reenter the country. *See* 8 U.S.C. § 1182(a)(17) (1982); 8 C.F.R. § 212.2 (1984). Dragon admitted the added charge and sought permission to reapply *nunc pro tunc* for admission into the United States.[2]

The Immigration Judge found that the INS had failed to establish that Dragon's marriage to Wilfred Dragon was a sham, but nevertheless found Dragon deportable based on her admission that she had reentered the United States without the permission of the Attorney General. The Immigration Judge denied Dragon's application to reapply *nunc pro tunc* and granted her voluntary departure. The BIA affirmed. Dragon subsequently moved to reopen the deportation proceedings based on her December 1977 marriage to Terrance Cunningham, a United States citizen,[3] alleging that deportation would result in extreme hardship to herself, her husband, and her children. The BIA denied the motion to reopen. Dragon timely petitioned this court for review of both decisions.

## II

An alien who seeks to reapply *nunc pro tunc* for admission into the United States has the burden of establishing that he or she merits a favorable exercise of discretion. *See In re Vorrias*, 12 I. & N.Dec. 84, 85 (BIA 1967); *see also Patel v. INS*, 741 F.2d 1134, 1136 (9th Cir.1984) (suspension of deportation). We review the denial of an application for permission to reapply only for an abuse of discretion. *Murillo-Aguilera v. Rosenberg*, 351 F.2d 289, 290 (9th Cir.1965).

We have held that the BIA, in determining whether to grant other forms of discretionary relief, is required to weigh all factors presented, both favorable and unfavorable. *See, e.g., De La Luz v. INS*, 713 F.2d 545, 546 (9th Cir.1983) (per curiam) (suspension of deportation). In such proceedings, the stated reasons for denying relief must reflect the BIA's consideration of all relevant factors. *Zavala-Bonilla v. INS*, 730 F.2d 562, 567 (9th Cir.1984); *Contreras-Buenfil v. INS*, 712 F.2d 401, 403 (9th Cir.1983) (per curiam). Moreover, the BIA is required to consider the cumulative effect of all emotional and economic hardship factors presented, *see Prapavat v. INS*, 662 F.2d 561, 562–63 (9th Cir.1981) (per curiam), and render a reasoned decision reflecting such consideration. *Reyes v. INS*, 673 F.2d 1087, 1089 (9th Cir.1982) (motion to reopen). Mere conclusory statements are inadequate. *Batoon v. INS*, 707 F.2d 399, 401 (9th Cir.1983).

The considerations underlying these important safeguards apply with equal force to the BIA's decisions whether to grant permission to reapply for admission to the United States. In deciding whether to grant such relief, the BIA must, as in other cases involving discretionary relief, consider expressly all relevant factors presented and issue a reasoned decision reflecting such deliberation. This rule applies in the case of *nunc pro tunc* applications as well.

Among the factors the BIA has found relevant in cases involving applications for permission to reapply are the following: (1)

---

**2.** The BIA has the authority in deportation proceedings to grant *nunc pro tunc* permission to reapply where the grant will effect a complete disposition of the case. *See In re Ng*, 17 I. & N.Dec. 63, 64 (BIA 1979).

**3.** Dragon was divorced from Wilfred Dragon in August, 1978.

the applicant's ignorance of the need to reapply for admission because he was unaware that he had been deported; (2) the reason the alien was originally deported; (3) the length of time the applicant has legally resided in the United States; (4) his or her moral character; (5) his or her family responsibilities; and (6) hardships resulting from deportation. *See In re Lee,* 17 I. & N.Dec. 275, 277–78 (Comm.1978); *In re Tin,* 14 I. & N.Dec. 371, 373–74 (R.C.1973); *see also In re Rapacon,* 14 I. & N.Dec. 375, 378 (R.C.1973).

In this case, Dragon stated that she believed her 1974 departure from the United States, four days late, had been voluntary and was thus unaware that she had self-deported and needed the permission of the Attorney General to reenter the country. She was originally deported because she had remained in the country beyond the period authorized by her visa and not because of any criminal or other wrongful conduct. Moreover, by granting Dragon voluntary departure, the Immigration Judge implicitly found that she was of good moral character. *See* 8 U.S.C. § 1254(e) (1982) (grant of voluntary departure contingent upon alien's showing of good moral character); *see also In re Carbajal,* 17 I. & N.Dec. 272, 274 (Comm.1978). The record reflects that Dragon is the mother of two children, both of whom reside with her. The younger child is a United States citizen by birth; the older child has been a permanent resident since 1975. While her appeal was pending before the BIA, Dragon married Terrance Cunningham, a United States citizen, and she and her two children have lived with Mr. Cunningham as a family unit since April 1980. Dragon contends that deportation would result in extreme hardship to herself, her husband, and her two children.

In denying Dragon's application for *nunc pro tunc* relief, the BIA peremptorily concluded that the "adverse factors" outweighed the favorable factors. The BIA did not state how it arrived at this conclusion, which factors it considered, or how it weighed the factors. The BIA merely upheld the Immigration Judge's finding that Dragon had married Wilfred Dragon as a "matter of convenience" and concluded that this outweighed the fact that Dragon is the mother of a United States citizen child and a permanent resident child.

However, neither the Immigration Judge nor the BIA made any findings as to whether Dragon was aware that she had self-deported and thus needed the permission of the Attorney General to reenter the country. Furthermore, no findings were made concerning the effect of deportation on Dragon's family responsibilities or other hardships that might result from deportation. The decisions do not reflect a consideration of the length of time Dragon had legally resided in the United States or. of her moral character.

The BIA's failure to consider these factors and to issue a reasoned disposition reflecting such consideration constituted an abuse of discretion. Accordingly, we reverse the denial of Dragon's application for permission to reapply *nunc pro tunc* for admission into the United States and remand to the BIA with instructions to evaluate expressly all relevant factors presented in the petition.

### III

Because we remand Dragon's petition to reapply *nunc pro tunc* to the BIA with instructions to consider expressly all relevant factors, it is not necessary to reach Dragon's second claim that the BIA abused its discretion in denying her motion to reopen. We note, however, that the basis of her second charge is identical to that underlying her first claim; namely, that the BIA abused its discretion by failing to evaluate all relevant factors.

**REVERSED AND REMANDED.**