107 F.3d 877
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Chona JAVELOSA-VAZQUEZ, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 96-70056.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 13, 1997.*
Decided Feb. 28, 1997.
 
 Before: BRUNETTI, FERNANDEZ and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Chona Javelosa-Vazquez, a Philippines citizen, petitions for review of the decision of the Board of Immigration Appeals ("BIA"), which affirmed the Immigration Judge's ("IJ") denial of her asylum application.
 
 
 3
 In 1989, Javelosa-Vazquez was managing the family business (a sugar cane plantation and a gas station) in the town of Sagay. Her husband was a member of a communist guerrilla organization, the New People's Army (the "NPA"), and a drug addict. Javelosa-Vazquez testified that sometimes her husband demanded money from her, as a member of the NPA, to use the money for drugs. She also testified that other NPA members demanded a "tax" from her, at first in small amounts of money or goods. She testified that she later told the NPA she was pro-government, and the NPA began demanding bigger taxes. The NPA also raided her barrio. Early in 1990, she left her husband and moved to a family home in Bacolod, a town about an hour's drive from Sagay. The NPA did not come to her house in Bacolod, but she believed there were "sparrow units" watching and waiting for her. She lived in Bacolod for three months before coming to the United States in 1990 as a nonimmigrant visitor for pleasure. She overstayed her visa and now, after the INS has commenced deportation proceedings, seeks asylum.
 
 
 4
 To be entitled to asylum, Javelosa-Vazquez must establish that she experienced past persecution or that she has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group or political opinion. 8 U.S.C. § 1101(a)(42). This persecution must be at the hands of the government or a group the government is unable or unwilling to control. See McMullen v. INS, 658 F.2d 1312, 1315 n. 2 (9th Cir.1981). The BIA's determination will be reversed only if the evidence was such that a reasonable factfinder would have to conclude otherwise. See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Even if Javelosa-Vazquez established a nexus between the NPA's extortion and accompanying threats and one of these five protected grounds, she failed to establish that the Philippine government is unable or unwilling to control the NPA.
 
 
 5
 There is no evidence that at the outset of the extortion the NPA had any knowledge of Javelosa-Vasquez's political opinion; rather, it appears the NPA was only concerned with obtaining financing. Documentary evidence in the administrative record indicates that the NPA's primary objective is to take advantage of the victim's wealth; the NPA is typically not concerned with the political opinion of its intended victim, unless the person was previously active with a civilian militia unit. U.S. Dep't of State, The Philippines: Profile of Asylum Claims and Country Conditions (1994). Javelosa-Vazquez testified that after paying the "tax" for awhile, she told the group she was pro-government, and then the NPA's demands increased. While it is possible that the increased tax was "on account of" her expressed opinion, the evidence does not compel this conclusion. It is equally possible that the organization, which is reported to be weakening, needed greater finances. In light of Javelosa-Vazquez's own affidavit and asylum application, which focus on fear of her husband, a NPA member, it also seems likely that her estranged husband used his affiliation with the NPA to seek revenge and a source of money for his drug habit. Javelosa-Vazquez testified that the NPA raided the barrio of Sagay because she refused to pay the increased tax. She did not, however, testify as to why she reached this conclusion as to the NPA's motivation; the BIA was therefore justified in treating this statement as speculation.
 
 
 6
 Even if we assume that the NPA's increased extortion and the raid on the barrio were "on account of" Javelosa-Vazquez's political opinion, she still has not established eligibility for asylum. An applicant bears the burden of proving that the source of persecution is the government or a group the government is unable or unwilling to control. McMullen, 658 F.2d at 1315 n. 2. In this case, by Javelosa-Vazquez's own testimony, the government did take actions to protect her and her community from the NPA. She testified that during the raid on the barrio, she contacted the government military, which sent reinforcements and killed some members of the NPA. She also stated in her asylum application that she forwarded threatening notes from the NPA to the military, and that she sometimes received police protection when traveling to her family's farm. Documentary evidence also suggests that the Philippines government is in control of the situation with the NPA: in 1994, it was estimated that the NPA has a significant presence in only three percent of the country's townships, and that the group's strength continues to decline, due in part to an amnesty offer by President Ramos. U.S. Dep't of State, The Philippines: Profile of Asylum Claims and Country Conditions (1994). Substantial evidence supports the BIA's conclusion that Javelosa-Vazquez did not show that the Philippine government was unwilling or unable to protect her from the NPA.
 
 
 7
 Because Javelosa-Vazquez failed to establish her eligibility for asylum, withholding of deportation and involuntary departure were also not appropriate.
 
 
 8
 REVIEW DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3