**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BERTA M. AREVALO,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 98-2254

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A73-718-241)

Submitted: February 23, 1999

Decided: April 2, 1999

Before WILLIAMS, MICHAEL, and TRAXLER, Circuit Judges.

_____

Petition denied by unpublished per curiam opinion.

_____

**COUNSEL**

Irena Izabella Karpinski, Washington, D.C., for Petitioner. Frank W.
Hunger, Assistant Attorney General, Norah Ascoli Schwarz, Senior
Litigation Counsel, Francesco Isgro, Office of Immigration Litigation,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Berta Arevalo petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, to confer asylum on any refugee. See 8 U.S.C.A. § 1158(a) (West Supp. 1998). The Act defines a refugee as a person unwilling or unable to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (en banc).

The well-founded fear of persecution standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992) (citation omitted); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

We must uphold the Board's determination that Arevalo is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994). **1** We accord the Board all pos-

_____

**1** We note that 8 U.S.C. § 1105a(a)(4) was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L.

2

sible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Arevalo] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Arevalo, who entered the United States without inspection in July 1994, disagrees with the Board's finding that she failed to establish a well-founded fear of persecution in her home country based on her political opinion or social group. Our review reveals, however, that substantial evidence supports the Board's finding that Arevalo did not satisfy her statutory burden. Although Arevalo and her family have apparently suffered great loss at the hands of some of her fellow countrymen, this loss does not warrant a grant of asylum under 8 U.S.C.A. § 1158.

In her application for asylum and in testimony before the immigration judge, Arevalo stated that she fears a group described as the "death squad," a group of former guerrillas who have a history of extorting money and food from Arevalo's family and business. According to Arevalo's sworn statement, the "death squad" extorted funds and goods from her family's restaurant until her mother and father were unable to pay. As a result, Arevalo states her father was murdered by the "death squad" in October 1989. Thereafter, in 1993, the "death squad" returned and killed her uncle and brother because of their collaboration with other guerrillas. Arevalo states that she reported this action to the police, and two suspects were arrested. However, because she was unable to garner evidence in support of her claim, these suspects were released, and soon afterward Arevalo began to receive death threats. Arevalo's mother then sent her to the United States for her protection. Arevalo claims that if she is returned to El Salvador there "is no doubt that I would be killed . . . because the police are either unwilling or unable to protect me from the death squad." (Administrative Record (A.R.) at 79).

_____

No. 104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

3

The immigration judge notes in her oral opinion that"fear of becoming the victim of criminal offenses is not a basis to claim a fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion." (A.R. at 41). We agree. Although Arevalo may fear the revenge of a group of lawless criminals, the appropriate inquiry is more properly focused on whether or not she will be subjected to persecution by the government or groups the government is either unwilling or unable to control. See McMullen v. INS, 658 F.2d 1312, 1315 n.2 (9th Cir. 1981). Arevalo cannot show that the government is either unwilling or unable to control this alleged group because, according to Arevalo, the group was arrested, and their prosecution was only discontinued after it became clear there was insufficient evidence to proceed. This does not, in and of itself, reflect an inability of the government to control the group. Although Arevalo may fear a general state of lawlessness in her home country, the law does not authorize asylum for someone who may be subject to general violence in her home country. See M.A. v. United States, 899 F.2d 304, 314-15 (4th Cir. 1990). To the contrary, it provides asylum for persecution on the basis of those five reasons found in 8 U.S.C.A. § 1101(a)(42)(A).

Although Arevalo seeks to bring her claim within the reach of the statute by alleging that she suffers persecution based on her membership in a particular social group,[2] we find this argument unpersuasive. The Board has previously rejected claims of membership in a group unless the group can be defined by "a common, immutable characteristic." Matter of Acosta, 19 I. & N. Dec. 211, 233-34 (BIA 1985) (rejecting a claim that taxi drivers were a protected social group because defining characteristics were not immutable). Arevalo's allegation that her family members were targeted as the proprietors of a restaurant does not qualify her as a member of a social group within the protections of the statute. Even if an applicant has well-founded fears, those fears cannot form the basis for a grant of asylum if the fears do not arise from the applicant's race, religion, nationality, political opinion, or membership in a particular social group. See Matter

_____

[2] Arevalo claims that her status as one of the owners of a restaurant classifies her as a member of an identifiable "entrepreneurial social group" that has been targeted for harassment and abuse by death squads for money. (Appellant's brief at 15).

4

of Mogharrabi, 19 I. & N. Dec. 439, 447 (1987). Therefore, substantial evidence supports the decision of the Board.

Because Arevalo has not established eligibility for asylum, she cannot meet the higher standard for withholding of deportation. See INS v. Cardoza-Fonseca, 480 U.S. 421, 430-32 (1987). We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

PETITION DENIED

5