MATTER OF RODRIGUEZ-PALMA

In Exclusion Proceedings

A-22792193

*Decided by Board August 26, 1980*

(1) Relief under section 243(h) of the Immigration and Nationality Act, as amended by the Refugee Act of 1980, 8 U.S.C. 1253(h), is not available to an alien who is considered to have committed a "serious nonpolitical crime" prior to his arrival in the United States.

(2) Relief under section 243(h) of the Immigration and Nationality Act, 8 U.S.C. 1253(h), as amended, is available in both exclusion and deportation proceedings. *See* 8 C.F.R. 208.10 (June 1, 1980).

(3) In determining whether a crime is a "serious nonpolitical crime" for purposes of eligibility for section 243(h) relief, the Office of the United Nations High Commissioner for Refugees *Handbook on Procedures and Criteria for Determining Refugee Status* (September 1979) suggests a balancing test, weighing the nature of the offense and the degree of persecution established.

(4) The applicant's 1968 Cuban conviction for the crime of robbery was a crime involving moral turpitude which has traditionally been characterized as a grave, serious, aggravated, infamous, and heinous crime and which will normally be considered a "serious nonpolitical crime" for purposes of section 243(h).

(5) The applicant's conviction for robbery would be considered the commission of a "serious nonpolitical crime" for purposes of section 243(h) even under a balancing test, where the applicant did not establish that his life or freedom would be threatened if returned to Cuba on account of race, religion, nationality, membership in a particular social group, or political opinion.

(6) An applicant who is within one of the undesirable groups enumerated in section 243(h)(2) of the Act because of the commission of a "serious nonpolitical crime" (robbery) prior to arrival, is ineligible for relief under sections 208 and 243(h)(1) of the Act. *See* 8 C.F.R. 208 (June 1, 1980).

EXCLUDABLE:
Order: Act of 1952—Sec. 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant—not in possession of valid unexpired immigrant visa or other valid entry document

Sec. 212(a)(9) [8 U.S.C. 1182(a)(9)]—Admission of conviction of crime involving moral turpitude

ON BEHALF OF APPLICANT: Pro se

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

In a decision dated June 17, 1980, an immigration judge found the applicant excludable under sections 212(a)(9) and (20) of the Immigration and Nationality Act, 8 U.S.C. 1182(a)(9) and (20), denied his requests for asylum and relief under section 243(h) of the Act, 8 U.S.C. 1253(h), and ordered his exclusion and deportation from the United States. The applicant has appealed. The appeal will be dismissed.

The applicant is a 39-year-old native and citizen of Cuba. He was part of the recent exodus from Cuba, arriving in the United States at Key West, Florida, in May 1980. The applicant was detained for an exclusion hearing and was charged with being excludable under sections 212(a)(9) and (20) of the Act, as having been convicted of a crime involving moral turpitude and as an immigrant not in possession of a valid unexpired immigrant visa or other valid entry document.

At an exclusion hearing begun on June 4, 1980, and completed on June 12, 1980, the applicant was advised of the nature of the proceedings, his right to be represented by counsel, and the availability of free legal services. The applicant elected to proceed without counsel and to speak for himself. We find that his decision to proceed without the assistance of counsel was competently, understandingly, and voluntarily made, and that the applicant effectively waived his right to counsel. *Ramirez v. INS*, 550 F.2d 560 (9 Cir. 1977).[1]

Prior to the hearing, the applicant executed an affidavit and a Request for Asylum (Form I-589) with attached statement. In these documents the applicant admitted that he had been arrested and convicted in Cuba on three occasions: drug trafficking in 1962, robbery in 1968, and robbery in 1978. He stated that he served 7 months imprisonment for his 1962 conviction, 2 years for his 1968 conviction, and 6 months for his 1978 conviction. During the hearing the applicant denied that he was convicted of drug trafficking in 1962 and robbery in 1978 but reaffirmed his arrest, conviction, and 2 years imprisonment for the crime of robbery in 1968. The applicant's conviction in 1968 was for a crime involving moral turpitude. *Brett v. INS*, 386 F.2d 439 (2 Cir. 1967); *United States v. Shaughnessy*, 219 F.2d 249 (2 Cir. 1955); *United States v. Day*, 54 F.2d 336 (2 Cir. 1931); *Matter of Quadra*, 11 I&N Dec. 457 (BIA 1966); *Matter of Z—*, 5 I&N Dec. 383 (BIA 1953). We find that the applicant's excludability under section 212(a)(9) of the Act has been established. During the proceedings the applicant also admitted alienage and that he was not in possession nor had he received any documentation issued by the United States, permitting him to enter this country. In view of our determination that the applicant is exclud-

---

[1] We note in this regard, that the applicant was 39 years old, had completed 8 years of formal education, and that the proceedings were conducted through the use of an interpreter in his native language, Spanish.

able under section 212(a)(9), we do not reach the issue of his excludability under section 212(a)(20).

The only remaining issue on appeal is the correctness of the denial of the applicant's requests for asylum and for relief under section 243(h). The immigration judge determined that the applicant was not statutorily eligible for relief, finding that he had committed a "serious nonpolitical crime" prior to his arrival in the United States and that he had failed to establish that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or politcal opinion if returned to Cuba. On appeal the applicant argues that he is entitled to the requested relief. He states that if returned to Cuba he will suffer imprisonment or possibly loss of his life.

Section 243(h) was recently amended by the Refugee Act of 1980[2] and now provides:

> (h)(1) The Attorney General shall not deport or return any alien (other than an alien described in section 241(a)(19)) to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.
>
> (2) Paragraph (1) shall not apply to any alien if the Attorney General determines that—
>
>> (A) the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion;
>>
>> (B) the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States;
>>
>> (C) there are serious reasons for considering that the alien has committed a serious non-political crime outside the United States prior to the arrival of the alien in the United States; or
>>
>> (D) there are reasonable grounds for regarding the alien as a danger to the security of the United States."

Congress in section 243(h) adopted, almost verbatim, the language of the United Nations 1951 Convention and 1967 Protocol Relating to the Status of Refugees (Protocol), United Nations Treaty Series, Vol. 189, p. 37 and Vol. 606, p. 267. *See* Article 1, paragraphs A(2) and F and Article 33 of the Convention.

---

[2] Pub. L. No. 96-212, 94 Stat. 102 (March 17, 1980). Relief under 243(h) is now available in both exclusion and deportation proceedings. *See* 8 C.F.R. 208.10 (June 1, 1980); 45 F.R. 37395 (June 2, 1980). *Compare* section 243(h), prior to amendment, wherein relief was limited to aliens "within the United States . . . ." Under the Refugee Act of 1980 both asylum under section 208(a) and relief under section 243(h) may be available to aliens physically present in the United States or at a land border or port of entry, irrespective of such alien's status. We note that Victor H. Palmieri, U.S. Coordinator for Refugee Affairs, Department of State, in a statement released June 20, 1980, indicated that recent Cuban-Haitian entrants may not be covered by the Refugee Act of 1980 and that special legislation regularizing their status will be sought by the President.

The issue before us is whether the applicant's 1968 Cuban conviction was for a "serious nonpolitical crime" within the meaning of section 243(h)(2)(C). The term "serious nonpolitical crime" is new to the Immigration Act and is not further defined therein.[3] The Conference Report which accompanied the final version of the Refugee Act of 1980 indicates that it was Congress' intent that the provisions of section 243(h) be construed consistently with the Protocol.[4]

Accordingly, we have looked to the Protocol for guidance as to the meaning of "serious nonpolitical crimes." While the term is used in the Protocol, it is not further defined there. However, the Office of the United Nations High Commissioner for Refugees, which has the responsibility of supervising the application of the provisions of the Protocol,[5] has published a *Handbook on Procedures and Criteria for Determining Refugee Status* (September 1979). The *Handbook* provides an interpretation of the meaning and application of the terms used in the Protocol. In particular, paragraphs 151-161, pp. 36-38, of the *Handbook* are concerned with the term "serious nonpolitical crimes" for purposes of excluding an alien from relief under the Protocol. Paragraph 155 provides in relevant part:

> In the present context, however, a serious crime must be a capital crime or a very grave punishable act. Minor offences punishable by moderate sentences are not grounds for exclusion under Article 1 F(b) even if technically referred to as crimes in the penal law of the country concerned.

Paragraph 156 provides:

> In applying this exclusion clause, it is also necessary to strike a balance between the nature of the offence presumed to have been committed by the applicant and the degree of persecution feared. If a person has well-founded fear of very severe persecution, e.g. persecution endangering his life or freedom, a crime must be very grave in order to exclude him. If the persecution feared is less serious, it will be necessary to have regard to the nature of the crime or crimes presumed to have been committed in order to establish whether the applicant is not in reality a fugitive from justice or whether his criminal character does not outweigh his character as a bona fide refugee.

Thus it can be seen that the *Handbook* suggests a balancing test, weighing the nature of the offense and the degree of persecution established, to determine whether a particular "nonpolitical crime" is "serious." Under this balancing test, what constitutes a "serious

---

[3] The Act specifies various crimes and criminal conduct which render a person subject to exclusion, deportation, or criminal sanctions. *See*, for example: sections 212(a)(9), (10), (23), 241(a)(4), (5), (11), (14), (17), 274-277. Congress specifically did not tie section 243(h) ineligibility for commission of a "serious" crime to the existing categories of crime contained in the Act.

[4] House of Representatives, 96 Congress, 2d Session, Report 96-781, February 22, 1980, p. 20.

[5] Article 35, paragraph 1, of the 1951 Convention Relating to the Status of Refugees.

nonpolitical crime" for purposes of ineligibility for relief under section 243(h) would require a case-by-case analysis.[6] Under the facts of this case, however, we are satisfied that the applicant has committed a "serious nonpolitical crime," rendering him ineligible for section 243(h)(1) relief, whether we apply a balancing test or make our determination based solely on the nature of the offense involved.

The applicant was convicted in Cuba in 1968 for the crime of robbery. This was a crime involving moral turpitude. *Brett, supra; Matter of Quadra, supra; Matter of Z—, supra.* Moreover, robbery is "a felony both at common law and under the statutes, ... constitutes an offense against both person and property, [and ...] has been characterized as a grave, serious, aggravated, infamous, and heinous crime.[7] The applicant was in fact sentenced and served two years in prison for this conviction.[8] Under the traditional view, based solely on the nature of the offense, the applicant has committed a "serious nonpolitical crime."

As regards the persecution claim, the applicant stated that he was not a communist, held anti-communist views, and feared persecution for these political beliefs if returned to Cuba. The only evidence submitted by the applicant to support the requested relief under section 243(h) were his statements in the Request for Asylum (Form I-589) with attached Addendum and during the exclusion hearing.

The Form I-589 indicated that the applicant believed he would be persecuted because of his political opinions. The forms reflected, however: that he had never belonged to any organizations hostile to the interests of Cuba; that he had never expressed any political opinions or acted in a manner which was regarded by the Cuban authorities as

---

[6] By the Refugee Act of 1980, Congress also added section 207(c)(3) to the Act, 8 U.S.C. 1157(c)(3), which, in part, permits the Attorney General to waive the criminal exclusionary provisions of section 212(a), including narcotics convictions. Only that part of section 212(a)(23) relating to a nonconviction charge of trafficking in narcotics was excepted from this waiver provision. Congress recognized that such waiver may be required in the discretion of the Attorney General for humanitarian reasons consistent with the purposes of the Refugee Act. Senate, 96 Congress, 2d Session, Report 96-2561, July 23, 1979, p. 15. These waiver provisions suggest a balancing of the criminal conduct and the degree of persecution involved.

[7] 77 C.J.S. Robbery section 2 (1952) (footnotes omitted).

[8] 18 U.S.C. section 1 provides:

Notwithstanding any Act of Congress to the contrary:

(1) Any offense punishable by death or imprisonment for a term exceeding one year is a felony.

(2) Any other offense is a misdemeanor.

(3) Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense.

Robbery is punishable by a maximum penalty of 15 years imprisonment under both federal law (18 U.S.C. 2111) and the District of Columbia Code (22-2901).

opposed to their interests; that he had not taken any actions which he believed would result in persecution in Cuba; that neither he nor any member of his family had ever been detained, interrogated, arrested, convicted and sentenced, or imprisoned because of his political beliefs; that the conditions in Cuba did not affect his freedom more than the rest of the Cuban population; and that his family had never suffered or been intimidated because of his absence or actions. The applicant states that he will be imprisoned or possibly lose his life if returned to Cuba. He has produced no evidence to support these claims.

Thus, assuming arguendo, that the balancing test was to be adopted and applied in the instant case, considering the nature of the crime and the evidence of persecution presented here, we would find that this case does involve the commission of a "serious nonpolitical crime."

We conclude that for purposes of section 243(h)(2)(C), under the facts of this case, the applicant committed prior to arrival a "serious nonpolitical crime," and was therefore ineligible for relief under sections 243(h)(1) and 208 of the Act.[9] The decision of the immigration judge, finding the applicant excludable under section 212(a)(9) and denying his application for asylum and requested relief under section 243(h) was correct. Accordingly, the appeal will be dismissed.

ORDER: The appeal is dismissed.

---

[9] An alien within one of the undesirable groups defined in section 243(h)(2) of the Act is not eligible for asylum under section 208(a) of the Act. See 8 C.F.R. 208 (effective June 1, 1980).