# In re S-S-, Respondent

*Decided January 21, 1999*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Under section 241(b)(3)(B)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3)(B)(ii) (Supp. II 1996), a determination of whether an alien convicted of an aggravated felony and sentenced to less than 5 years' imprisonment has been convicted of a "particularly serious crime," thus barring the alien from withholding of removal, requires an individual examination of the nature of the conviction, the sentence imposed, and the circumstances and underlying facts of the conviction. *Matter of Frentescu*, 18 I&N Dec. 244 (BIA 1982), followed.

(2) Under section 241(b)(3)(B) of the Act, a determination of whether an aggravated felony conviction constitutes a "particularly serious crime" per se is based on the length of sentence imposed, rather than on the category or type of aggravated felony conviction that resulted in the conviction. *Matter of Gonzalez*, 19 I&N Dec. 682 (BIA 1988), explained and distinguished.

(3) Under section 241(b)(3)(B) of the Act, there no longer exists a rebuttable presumption that an alien convicted of an aggravated felony for which a sentence of less than 5 years was imposed has been convicted of a "particularly serious crime" rendering the alien ineligible for withholding of removal. *Matter of Q-T-M-T-*, 21 I&N Dec. 639 (BIA 1996) (regarding withholding of deportation), distinguished.

(4) An alien who was convicted of first degree robbery of an   occupied home while armed with a handgun and sentenced to 55 months' imprisonment has been convicted of an aggravated felony under section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (Supp. II 1996), and, upon consideration of the nature of the conviction and the sentence imposed, as well as the underlying facts and circumstances of the conviction, has been convicted of a "particularly serious crime" rendering the alien ineligible for withholding of removal under section 241(b)(3)(B)(ii) of the Act.

Pro se

Tammy L. Fitting, Assistant District Counsel, for the Immigration and Naturalization Service

Before:   Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, ROSENBERG, MATHON, GUENDELSBERGER, JONES, GRANT, and SCIALABBA, Board Members.

ROSENBERG, Board Member:

In a decision dated July 16, 1997, an Immigration Judge found the respondent removable as charged and ineligible for any form of relief from removal, and ordered him removed from the United States to Laos. The respondent filed a timely appeal. We have reviewed the issue presented on appeal de novo. *Matter of Burbano*, 20 I&N Dec. 872 (BIA 1994); *see also Matter of H-*, 21 I&N Dec. 337 (BIA 1996). The appeal will be dismissed. The request for oral argument is denied. *See* 8 C.F.R. § 3.1(e) (1998).

The respondent is a native and citizen of Laos who was admitted to the United States on November 5, 1985, as a refugee. On September 4, 1991, the respondent was accorded the status of lawful permanent resident as of March 24, 1989. The respondent admitted that on November 4, 1994, he was convicted in the Superior Court of Washington for King County of the offense of first degree robbery while armed with a handgun, in violation of section 9A.56.200(1)(a) of the Revised Code of Washington. He was sentenced to 55 months in prison for such offense. The record contains a properly certified copy of a "Judgment and Sentence" consistent with the respondent's admission. It also contains an "Amended Information" stating that the respondent "did unlawfully and with intent to commit theft take personal property" from the victim, "by the use or threatened use of immediate force, violence and fear of injury to such person or her property."

On appeal, the respondent expresses repentance for his misdeeds, concern for his family should he be removed, and fear of harm if returned to Laos. In response, the Immigration and Naturalization Service endorses the decision of the Immigration Judge.

## I. ISSUE PRESENTED ON APPEAL

The issue on appeal presents a question of first impression concerning the authority presently accorded the Attorney General under section 241(b)(3)(B)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3)(B)(ii) (Supp. II 1996): whether a determination that the respondent, "having been convicted by a final judgment of a particularly serious crime, is a danger to the community of the United States," shall be based on an individual examination of the nature of the respondent's conviction for first degree robbery while armed with a handgun, the sentence imposed for that conviction, and the circumstances and underlying facts of the conviction.

## II. FINDINGS OF REMOVABILITY AND ANALYSIS OF PARTICULARLY SERIOUS CRIME EXCEPTION

Upon review, we find that the respondent was properly placed in removal proceedings under section 240 of the Act, 8 U.S.C. § 1229a (Supp.

II 1996), by the filing of a Notice to Appear (Form I-862) with the Immigration Court on June 18, 1997. *See* 8 C.F.R. § 239.1(a) (1998). The Notice to Appear charges, in pertinent part, that the respondent is removable under section 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. II 1996), for having been convicted of "an aggravated felony as defined in section 101(a)(43) of the Act, to wit: a crime of violence (as defined in section 16 of title 18, United States Code)" for which a term of imprisonment of more than 1 year was imposed. We find that the respondent's admission to the allegations and charges, together with the certified copy of the "Judgment and Sentence" present in the record, establish that the respondent has been convicted of an aggravated felony and sentenced to 55 months' imprisonment. *See* section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (Supp. II 1996).

We agree with the Immigration Judge that, consequently, the respondent is not eligible for asylum. *See* sections 208(b)(2)(A)(ii), (B)(i) of the Act, 8 U.S.C. §§ 1158(b)(2)(A)(ii), (B)(i) (Supp. II 1996). The remaining question that we must address, however, is whether the respondent, who was convicted of an aggravated felony and sentenced to less than 5 years' incarceration, is barred from withholding of removal under section 241(b)(3)(B) of the Act.

In removal proceedings, section 241(b)(3)(A) of the Act specifies that there shall be a restriction on removal to a country where an alien's life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion.[1] Section 241(b)(3)(B) of the Act provides certain exceptions to the restriction. In the instant case, we are concerned with section 241(b)(3)(B)(ii) of the Act, which states that an alien is ineligible for withholding if "the alien, having been convicted by a final judgment of a particularly serious crime, is a danger to the community of the United States." The final paragraph of section 241(b)(3)(B) of the Act states the following:

> For purposes of clause (ii), an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.

We recognize that the "particularly serious crime" exception to our obligation to protect those who face or have suffered mistreatment on

---

[1]This provision was added by section 305(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-602 (enacted Sept. 30, 1996) (effective Apr. 1, 1997).

account of one of the bases contained in the refugee definition is appropriately invoked when extending such protection would threaten the safety and security of our own citizens. *See* Office of the United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria For Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees para. 154, at 36 (Geneva, 1992) ("Handbook")*.[2] According to the *Handbook*, while the United Nations Protocol Relating to the Status of Refugees, *opened for signature* Jan. 31, 1967, 19 U.S.T. 6223, T.I.A.S. No. 6577, 606 U.N.T.S. 267 (entered into force Oct. 4, 1967; for United States Nov. 1, 1968) ("Protocol"), does not require signatory states to tolerate nonnationals who represent a security risk or a danger to the community, it contemplates that a signatory state will make an individual assessment within the context of the state's legal system, including the consideration of mitigating and aggravating circumstances, in determining whether the individual refugee constitutes a danger to the community. *Handbook, supra*, paras. 155, 157, at 36-37.

## A. Applicable Legal Standard: Historical Background

The text of the current withholding of removal provision is based on our accession to the 1967 Protocol Relating to the Status of Refugees, applying articles 2 through 34 of the 1951 United Nations Convention Relating to the Status of Refugees, *adopted* July 28, 1951, 189 U.N.T.S. 150 (entered into force Apr. 22, 1954) ("Convention"), to all refugees, without regard to geographic or other limitations contained in the Convention as to events occurring before 1951.[3] Protocol, *supra*, art. 1, para. 1; *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 436-37 (1987) ("If one thing is clear from the legislative history of the new definition of 'refugee,' and indeed the entire 1980 Act, it is that one of Congress' primary purposes was to bring United States refugee law into conformance with the . . . Protocol . . . .").[4] Article 33 of the Convention provides that "[n]o Contracting State shall expel or return ('refouler') a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened," but that this protection "*may not, however, be claimed by a*

---

[2]The *Handbook* is a practical guide intended to assist government officials in applying international refugee laws. *See INS v. Cardoza-Fonseca,* 480 U.S. 421 (1987); *Matter of Rodriguez-Palma*, 17 I&N Dec. 465, 468 (BIA 1980).

[3]The origins of former section 243(h) of the Act, 8 U.S.C. § 1253(h) (1994), the withholding of deportation provision that section 241(b)(3) of the Act replaced, can be traced back to the Immigration and Nationality Act of 1952, ch. 477, 66 Stat. 163.

[4]Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102; *see also* H.R. Conf. Rep. No. 96-781 (1980), *reprinted in* 1980 U.S.C.C.A.N. 160, 161; H.R. Rep. No. 96-608, at 6, 17-18 (1979) (stating Congress' intent to comply precisely with the Protocol).

*refugee . . . who, having been convicted by a final judgement of a particularly serious crime, constitutes a danger to the community of that country.* Convention, *supra,* art. 33 (emphasis added).

The Board originally addressed the question of what would be a "particularly serious crime" in *Matter of Frentescu*, 18 I&N Dec. 244 (BIA 1982), *modified, Matter of C-*, 20 I&N Dec. 529 (BIA 1992), *Matter of Gonzalez*, 19 I&N Dec. 682 (BIA 1988). In *Matter of Frentescu*, the Board held that "[i]n judging the seriousness of a crime, we look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, *most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community.*" *Id.* at 247 (emphasis added). Furthermore, we stated that crimes against persons are more likely to be categorized as particularly serious, but that there may be instances where crimes (or a crime) against property will be considered to be particularly serious. *Id.*

Subsequently, in 1990, Congress stated categorically that all aggravated felonies constitute particularly serious crimes, rendering any alien convicted of an aggravated felony ineligible for withholding of deportation. *See* former section 243(h) of the Act, 8 U.S.C. § 1253(h) (Supp. II 1990); *see also Matter of Q-T-M-T-,* 21 I&N Dec. 639, at 649-51 (BIA 1996). Congress' declaration of this per se equation eliminated the basis for conducting an individual analysis of the underlying facts and circumstances of the crime in any case where the conviction was for an aggravated felony. *See Matter of U-M-*, 20 I&N Dec. 327 (BIA 1991), *aff'd, Urbina-Mauricio v. INS*, 989 F.2d 1085 (9th Cir. 1993), *modified, Matter of C-, supra, clarified, Matter of K-*, 20 I&N Dec. 418 (BIA 1991); *cf. Matter of Frentescu, supra.*[5]

On April 24, 1996, Congress enacted section 413(f) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1269 ("AEDPA"), which expressly amended section 243(h) of the Act to provide the Attorney General discretionary authority to override the categorical bar that designated every aggravated felony a particularly serious crime, if she determined it necessary to do so in order to comply with our nonrefoulement obligation under the Protocol. *Matter of Q-T-M-T-, supra,* at 653-54. Soon thereafter, on September 30, 1996,

---

[5]The Board has interpreted this exception as providing that once an alien's crime is determined to be "particularly serious," it necessarily follows that the alien "constitutes a danger to the community." *Matter of Carballe*, 19 I&N Dec. 357 (BIA 1986), *modified, Matter of C-, supra, clarified, Matter of K-*, 20 I&N Dec. 418 (BIA 1991), *modified on other grounds, Matter of Gonzalez, supra.*

Congress enacted section 305(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-602 ("IIRIRA"), which again amended former section 243(h) of the Act and recodified it as section 241(b)(3) of the Act, effective on or after April 1, 1997.[6]

In construing the amendment of former section 243(h) in the context of a deportation case, the Board had reasoned that section 413(f) of the AEDPA was best read as introducing a narrow discretionary exemption from the surviving exception, which precluded withholding of deportation under section 243(h)(2)(B) of the Act. *See Matter of Q-T-M-T-*, *supra.* The Board concluded that a presumption that the existing statutory bar was in compliance with the Protocol was necessary and appropriate because Congress did not revoke the categorical bar to withholding that had been imposed in 1990. At that time, taking guidance from the new standard set by Congress in section 305(a) of the IIRIRA, applicable to proceedings initiated after April 1, 1997, we interpreted section 413(f) of the AEDPA as creating a "rebuttable presumption" that an alien convicted of an aggravated felony for which a sentence of less than 5 years was imposed has been convicted of a particularly serious crime. Consequently, the Board held that in assessing eligibility for withholding of deportation, we must ascertain "whether there is *any unusual aspect* of the alien's particular aggravated felony conviction that convincingly evidences that his or her crime cannot rationally be deemed 'particularly serious'" in light of United States treaty obligations under the Protocol. *Matter of Q-T-M-T-, supra*, at 654 (emphasis added); *see also Matter of L-S-J-*, 21 I&N Dec. 973 (BIA 1997).

## B. Applicable Legal Standard: Current Statute

Congress' most recent revision of the "particularly serious crime" clause, in the IIRIRA, accomplished what section 413(f) of the AEDPA had not: it eliminated the categorical exception to withholding of removal for every alien convicted of an aggravated felony. Conviction of an aggravated felony no longer renders every such conviction a "particularly serious crime" per se, and the basis on which we previously established a rebuttable presumption in *Matter of Q-T-M-T-, supra*, no longer exists.

Instead, the statutory language now in effect and applicable to the case before us declares that an alien who has been convicted of an aggravated felony and is sentenced to at least 5 years' imprisonment has been convict-

---

[6]The relevant provision of former section 243(h)(2)(B) of the Act was applicable to an alien who "*constitutes a danger* to the community of the United States." *Id.* (emphasis added). The current clause now applies to an alien who "*is a danger* to the community of the United States." Section 241(b)(3)(B)(ii) of the Act (emphasis added).

ed of a particularly serious crime, but expressly affords the Attorney General discretion to exercise her judgment as to whether the conviction is for a particularly serious crime when an alien has been sentenced to less than 5 years for the very same offense. In extending this authority to the Attorney General, Congress used permissive language, stating that its conclusion that an alien sentenced to at least 5 years had committed a particularly serious crime "*shall not preclude* the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime." Section 241(b)(3)(B) (emphasis added). Congress neither imposed any presumption that an aggravated felony carrying a sentence of fewer than 5 years is a particularly serious crime, nor called for any blanket exercise of the Attorney General's authority to determine the applicability of section 241(b)(3)(B)(ii) of the Act in such cases. *See INS v. Cardoza-Fonseca, supra*, at 431 (addressing the proper construction of Congress' use of different language in different sections of the same act); *see also Matter of Fuentes-Campos*, 21 I&N Dec. 905 (BIA 1997).

We observe that, in enacting section 241(b)(3)(B) of the Act, Congress plainly stated its intent to determine that convictions that fall within the aggravated felony definition are deemed to be "particularly serious" based on the length of sentence imposed, rather than in terms of the category or type of crime that resulted in the conviction. *Cf. Matter of Gonzalez, supra*. If the statutory language used constitutes a plain expression of congressional intent as to the precise question addressed in the statute, it must be given effect. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). Notably, Congress eliminated its previous per se equation of all aggravated felonies with particularly serious crimes. *Cf. Matter of Q-T-M-T-, supra*. Congress easily could have designated categories of aggravated felonies that it considered to be particularly serious crimes—either independently or in conjunction with a specific sentence—but it did not do so.

The Attorney General has discretionary authority to determine whether an aggravated felony conviction resulting in a sentence of less than 5 years is a particularly serious crime under section 241(b)(3)(B)(ii) of the Act. *See Matter of Frentescu, supra; see also Yepes-Prado v. INS*, 10 F.3d 1363, 1371 (9th Cir. 1992) ("The IJ or the BIA must . . . consider the relative seriousness of the particular conduct of which the petitioner was convicted.") (referring to consideration of a waiver application); *Beltran-Zavala v. INS*, 912 F.2d 1027, 1032 (9th Cir. 1990) (clarifying that a categorical classification of a certain type of crime as being particularly serious would be inappropriate, because Congress could have elected to "erect per se classifications of crimes precluding . . . benefits" and did not do so). In the absence of a satisfactory showing that every robbery conviction, or even every armed robbery conviction, under this or any other statute constitutes a "par-

ticularly serious crime" in all cases, consideration of the individual facts and circumstances is appropriate.[7] *See Matter of L-S-J-, supra*, at 974-75 (finding a particularly serious crime under the former "rebuttable presumption" standard by considering the particular type of crime committed, the sentence imposed, and certain aggravating factors such as the facts that the respondent brandished a handgun, threatened violence, and endangered the lives of several individuals who were victims of the robbery).

### III. CHARACTERIZATION OF THE RESPONDENT'S CONVICTION UNDER THE CURRENT WITHHOLDING OF REMOVAL STATUTE

Adopting an individual analysis approach to consider and characterize the respondent's conviction under section 241(b)(3)(B) of the Act, we conclude that the respondent has been convicted of an aggravated felony that is a particularly serious crime. Looking first to the statute under which the respondent was convicted to determine the nature of the conviction, we find that robbery in the first degree, as defined under the Washington statute, requires that "in the commission of a robbery or of immediate flight therefrom," the offender either "[i]s armed with a deadly weapon; . . . [d]isplays what appears to be a firearm or other deadly weapon; or . . . [i]nflicts bodily injury." Wash. Rev. Code § 9A.56.200(1) (West 1998).

In addition, looking to a certified copy of the "Judgment and Sentence" that was submitted by the Service, we find that the respondent was sentenced to 55 months in prison, just 5 months short of the 5-year period of imprisonment that would have rendered him statutorily ineligible for withholding of removal. *See* section 241(b)(3)(B) of the Act. Furthermore, he was ordered to pay restitution of over $5,000. We note that the "Judgment and Sentence" in the record contains an appendix in which the respondent is "further ordered" to comply with a 2-year period of community placement on account of having been convicted of a serious violent offense after July 1, 1990. This constitutes an additional "sentence" to 2 years or up to the period of earned release awarded pursuant to Washington law, which imposes specific conditions on the respondent's ability to function in the community. The appendix notes that all conditions are held in abeyance while the respondent is out of the country pursuant to deportation.

The length of sentence and additional commitment to community placement has a bearing on our characterization of the respondent's conviction. A sentence of nearly 5 years indicates that the sentencing judge felt it

---

[7]We leave for another day the question of whether, and under what conditions, it might be appropriate, as a matter of discretion, for the Attorney General to designate certain offenses as being particularly serious crimes per se.

important to keep the respondent out of the community for a reasonably long period of time, and that, considering the requirements of the state statute, his reintroduction to the community had to be closely monitored.

As evidence of the aggravating circumstances of the crime, the Immigration and Naturalization Service provided a properly certified copy of the "Amended Information," which reveals that the respondent, together with two other individuals, took jewelry and a purse and its contents from each of the adult victims, against their will, using force or threatened force, which included displaying a handgun. *Cf. Handbook, supra*, para. 157, at 37. Moreover, a certified copy of a Supplemental Certification for Determination of Probable Cause reflects that at least one of the victims, who was a female, was taken out of the shower during the robbery and that a 6-year-old child was present and witnessed the respondent going into his mother's room and in and out of the house during the robbery. This document also includes a request for bail in the amount of $100,000, alleging that the defendants "may be responsible for numerous robberies in California and Oregon . . . [which] involve violence and the use of firearms."

This evidence indicates that the crime underlying the conviction involved the invasion of a home, and that two women and a child—one of whose vulnerability was exacerbated by being seized while in the shower— were confronted violently by the respondent and his companions and were placed in fear for their safety. The respondent, for his part, did not offer any other evidence of the nature or circumstances of the crime, nor did he provide any evidence of mitigating circumstances relevant to our determination of the seriousness of the crime. *Cf. Handbook, supra*, para. 157, at 37. The respondent's statement on appeal does not challenge the conclusion of the Immigration Judge that his conviction was for a particularly serious crime, other than to report that while in prison he worked regularly and recognizes his mistakes, that he fears returning to Laos, and that he has a wife and children in this country.

Our focus is on circumstances related to the crime for which the respondent was convicted, and not on any equities or other favorable discretionary factors. *See Matter of Frentescu, supra; cf. Matter of Marin*, 16 I&N Dec. 581 (BIA 1978). From the information in the record it appears that the respondent played an equal part in the robbery, that he was armed with a handgun, that his victims were two women and a child, and that the robbery appears to have occurred during a break-in at the victims' home while they were present. Whatever may be the respondent's present level of reformation or remorse, the record contains no evidence explaining his involvement in the crime or mitigating the seriousness of his violent invasion of the victims' home and commission of a robbery using a deadly weapon. Similarly, the record contains no evidence of any basis for a downward departure from the 55- to 60-month sentence range, or cause for

leniency on the part of the trial court in levying a sentence of almost 5 years.

In sum, we find that the nature of the crime, the length of sentence, and the circumstances under which the robbery was committed support the conclusion that the respondent's conviction for robbery in the first degree while armed with a handgun constitutes a particularly serious crime. *See Matter of Frentescu, supra; see also Matter of L-S-J-*, *supra* (holding that conviction for armed robbery constitutes a particularly serious crime rendering the alien ineligible for withholding of deportation). The commission of a robbery offense entailing these circumstances is a "particularly serious crime" as defined in the statute, notwithstanding the fact that the sentence imposed was for less than 5 years. The result is that the respondent constitutes a danger to the community. We therefore concur with the Immigration Judge's conclusion that the respondent is ineligible for withholding of removal. *See* section 241(b)(3)(B) of the Act. The respondent's conviction also renders him ineligible for cancellation of removal. *See* sections 240A(a)(3), (b)(1)(C) of the Act, 8 U.S.C. §§ 1229b(a)(3), (b)(1)(C) (Supp. II 1996).

Accordingly, as the respondent has not established eligibility for any form of relief from removal, his appeal will be dismissed.

**ORDER:**  The appeal is dismissed.

Board Member Anthony C. Moscato did not participate in the decision in this case.