Jatinder Pal **SINGH**, Petitioner–
Appellant,

v.

John **ASHCROFT**, Attorney General;
Charles H. Demore, Respondents–
Appellees.

No. 02–16476.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 2003.

Filed Dec. 5, 2003.

Martin Resendez Guajardo, San Francisco, CA, for petitioner-appellant Jatinder Pal Singh.

Josh Braunstein, Washington, DC, Shelley R. Goad, Washington, DC, for respondents-appellees John Ashcroft and Charles H. Demore.

Before: O'SCANNLAIN and TASHIMA, Circuit Judges, and MATZ,* District Judge.

* The Honorable A. Howard Matz, United States District Judge for the Central District of California, sitting by designation.

MATZ, District Judge.

On this appeal from the District Court's denial of a habeas corpus petition, we are presented with two familiar issues of habeas jurisdiction. First, does a classification by the Board of Immigration Appeals ("BIA") that a crime committed by an alien facing removal was "particularly serious" constitute an exercise of discretion not reviewable on habeas corpus? Second, does a federal court have habeas jurisdiction to adjudicate an alien's claim that in approving a removal order the BIA violated his rights under the United Nations Convention Against Torture or Other Cruel, Inhuman or Degrading Treatment or Punishment ("the Convention")?

Jatinder Pal Singh ("Singh"), a native and citizen of India, appeals the district court's denial of his habeas corpus petition. Singh argues that the BIA erred in determining that he had been convicted of a "particularly serious crime," which makes him ineligible for withholding of removal under 8 U.S.C. § 1231(b)(3). Singh also argues that the BIA erred in determining that his removal does not violate the Convention.

We have jurisdiction under 28 U.S.C. §§ 2241 and 2253 and we affirm. In doing so, we hold that:

(1) This Court lacks jurisdiction over Singh's challenge to the BIA's determination of the particular seriousness of his crime.

(2) The law implementing the Convention does not divest us of jurisdiction over Singh's Convention claim.

(3) On the merits the BIA did not err in rejecting Singh's Convention claim.

## BACKGROUND

Singh immigrated to the United States from India in 1984, when he was six years old. On July 6, 1998, he pled guilty in a California Superior Court to one count of assault with a weapon or with force likely to produce great bodily injury.

On October 9, 1998, the Immigration and Naturalization Service ("INS") charged Singh with removability under 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that any alien convicted of an aggravated felony is deportable.[1] Singh applied for asylum and withholding of removal. As support for his application, Singh offered the declaration of his father. In addition, Singh and his brother, Sadnan Singh ("Sadnan"), both testified orally at a hearing before an Immigration Judge ("IJ").

### I. The Testimony of Singh's Family

In his declaration and testimony, Singh's father stated that he fears that the family of his first wife ("Singh's mother") will harm Singh if he returns to India. Singh's father testified that he and Singh's mother were divorced in India but that he promised he would help her immigrate to the United States after he settled here with the couple's two sons (Singh and Sadnan). Singh's father married again and thereafter broke his promise to Singh's mother. The father believes that members of Singh's mother's family, some of whom are high ranking police officers, will try to take revenge against him by targeting Singh. Singh's father has not spoken to Singh's mother's family but he has learned from his own sisters and from his son

Sadnan that members of Singh's mother's family are angry with him, that they have threatened to kill him and that they view his son Singh as having taken his side.

Sadnan testified that he visited India in 1995 and stayed with his (and Singh's) mother's family. During that visit, members of the mother's family told him that they were very angry with Singh's father for breaking his promise to Singh's mother, that they blamed the father for some of the mother's health problems and that one uncle threatened Singh's father. Sadnan also testified that his mother's family viewed Singh as having taken his father's side.

### II. The IJ's Decision

The IJ issued an oral decision on January 25, 2001. Because Singh admitted the facts in the Notice to Appear, the IJ ruled that he was removable. The IJ also ruled Singh ineligible for a waiver of deportation under 8 U.S.C. § 1182(h) because he is an aggravated felon. In addition, he found Singh ineligible for withholding of removal under 8 U.S.C. § 1231(b)(3) because his crime—assault with a weapon or force likely to produce great bodily injury—was "particularly serious." The IJ credited much of Singh's testimony about the assault for which he was convicted. The IJ accepted Singh's testimony that on that day he had been drinking with friends, that he and his friends were involved in a fight, that Singh did not have a knife and that he did not stab the assault victim himself. However, Singh admitted that he kicked the victim, and the IJ ruled that kicking the victim while he was on the

---

1. As of March 1, 2003, the Immigration and Naturalization Service ceased to exist and most of its functions were transferred to the Bureau of Border Security and the Bureau of Citizenship and Immigration Services. See Homeland Security Act of 2002, Pub. L. No. 107–296, 116 Stat. 2135. As of this writing, the conforming amendments to the Immigration and Nationality Act have not been completed and none of the statutes at issue here has been affected. For convenience, we refer to the applicable government agency as the INS.

ground was likely to cause great bodily harm. The IJ also ruled that Singh failed to make a showing of likely torture sufficient to invoke the protections of the Convention.

### III. The BIA's Decision

The BIA dismissed Singh's appeal, agreeing with the IJ that Singh is ineligible for withholding of removal because he committed a particularly serious crime. The BIA found that Singh's conduct during the assault demonstrated a complete disregard for others' safety, noting that evidence in the record showed that Singh kicked the victim in the head.

The BIA also agreed with the IJ that Singh failed to demonstrate that more likely than not he will be tortured in India. In reaching this decision, the BIA noted that members of Singh's mother's family have never threatened Singh, and that even Singh's father, who has been threatened, was able to visit India safely by staying away from his home town.

### IV. The District Court's Decision

Singh filed a petition for a writ of habeas corpus which the district court denied on July 29, 2002. The district court explained that the crime itself (assault with a weapon likely to produce great bodily injury), Singh's two-year sentence and his conduct in kicking the victim in the head supported the BIA's finding that his crime was particularly serious. While noting that whether the court had jurisdiction over the Convention claim was an "unsettled" issue, the district court found Singh's assertions that he is likely to be tortured in India "too speculative and without evidentiary support" to implicate the Convention.

### STANDARD OF REVIEW

 The district court's denial of habeas corpus is reviewed *de novo*. *Singh v. Reno*, 113 F.3d 1512, 1514 (9th Cir.1997). Questions of subject matter jurisdiction also are reviewed *de novo*. *Taniguchi v. Schultz*, 303 F.3d 950, 955 (9th Cir.2002). "The issues before this court are thus in the same posture as those before the district court and require us to consider the rulings of the BIA." *Singh v. Ilchert*, 63 F.3d 1501, 1506 (9th Cir.1995). When the BIA has conducted a *de novo* review of the record, the Ninth Circuit's review is limited to the BIA's decision, except to the extent the BIA expressly adopted the IJ's opinion. *Cordon–Garcia v. INS*, 204 F.3d 985, 990 (9th Cir.2000).[2] Here, the BIA made its own findings based on an independent review of the record. Therefore, the Court limits its review to the BIA's decision.

### DISCUSSION

### I. The Court Does Not Have Jurisdiction over Singh's Challenge to the BIA's "Particularly Serious Crime" Determination

#### A. Statutes Governing Discretionary Determinations by the INS

Pursuant to 8 U.S.C. § 1231(b)(3)(A), the Attorney General ordinarily may not remove an alien to a country where his life or freedom would be threatened on the basis of political opinion or on the basis of race, nationality or membership in a particular social group. However, withholding of removal under this section is not available to any alien whom the Attorney General determines is a "danger to the

---

**2.** To the extent the IJ's and the BIA's credibility and other findings are at issue, they are reviewed for "substantial evidence." *Id.*

community of the United States" because he or she has been "convicted ... of a particularly serious crime." 8 U.S.C. § 1231(b)(3)(B)(ii).

An aggravated felony that results in at least a five-year sentence is considered a particularly serious crime. *Id.* Moreover, under Section 1231(b)(3)(B)(ii) the Attorney General may determine that *any* aggravated felony, even one that results in a sentence of less than five years, qualifies as particularly serious. In *Matsuk v. INS,* 247 F.3d 999, 1002 (9th Cir.2001), this Court characterized as discretionary a determination by the Attorney General as to whether an aggravated felony resulting in a sentence of less than five years is a particularly serious crime. *See also In re S–S–,* 22 I. & N. Dec. 458, 1999 WL 38822 (BIA 1999). The Court went on to hold that 8 U.S.C. § 1252(a)(2)(B)(ii) divested it of jurisdiction to review a denial of withholding based upon the BIA's exercise of such discretion.[3] In *Spencer Enter., Inc. v. United States,* 345 F.3d 683 (9th Cir. 2003), this Court recently ruled that Section 1252(a)(2)(B)(ii) "refers not to 'discretionary decisions' ... but to acts the *authority* for which is *specified* under the INA to be discretionary." *Id.* at 689. (emphasis in original) Citing *Matsuk,* the *Spencer* court noted "that language giving the Attorney General the authority to 'determin[e] ... that an alien has been convicted of a particularly serious crime,' 8 U.S.C. § 1231(b)(3)(B), was sufficient to specify that the Attorney General's authority was discretionary.... Thus, [in *Matsuk*] jurisdiction [to review the Attorney General's determination that a crime was particularly serious] was precluded ...." *Id.* at 689–90.

## B. The Scope of Habeas Jurisdiction

■ The scope of habeas jurisdiction under 28 U.S.C. § 2241 is limited to claims that allege constitutional or statutory error in the removal process. *Gutierrez–Chavez v. INS,* 298 F.3d 824, 829–30 (9th Cir. 2002). When a petitioner challenges a discretionary determination made by the INS, "[h]abeas is available to claim that the INS somehow failed to exercise discretion in accordance with federal law or did so in an unconstitutional manner. But habeas is not available to claim that the INS simply came to an unwise, yet lawful, conclusion when it did exercise its discretion." *Id.* at 828. In *Gutierrez–Chavez,* the appellant, who had been convicted of selling cocaine, requested a discretionary waiver of his removal. After the IJ denied his request (and the BIA affirmed), the appellant petitioned for a writ of habeas corpus, arguing that the BIA abused its discretion when it found that the positive equities in his favor did not outweigh the negative factors. *Id.* at 827. The district court reviewed Gutierrez's claim on its merits and denied it, as the district court did here. *Id.* The Ninth Circuit held that the district court did not have jurisdiction over the merits of Gutierrez's claim, stating that "[h]abeas petitions that ... simply seek to change the discretionary result reached by the INS are not within the scope of § 2241 and should be denied." *Id.* at 830.

## C. Here, Singh Merely Disagrees With the BIA's Exercise of Discretion

The determination of whether an alien has been convicted of a particularly serious crime "requires an individual examination of the nature of the conviction, the sen-

---

**3.** Section 1252(a)(2)(B)(ii) provides that "Notwithstanding any other provision of law no court shall have jurisdiction to review ... any decision of the Attorney General the authority for which is specified ... to be in the discretion of the Attorney General...."

tence imposed, and the circumstances and underlying facts of the conviction." *In re S–V–*, 22 I. & N. Dec. 1306 at IIIA, 2000 WL 562836 (BIA 2000), *disapproved on other grounds in Zheng v. Ashcroft*, 332 F.3d 1186, 1196 (9th Cir.2003).

In his brief on appeal Singh admits that the "District Court ... considered the statute under which Singh was convicted ... his two year mid-range sentence and Singh's conduct in kicking the victim...." Such a review comports with the applicable requirements. Singh nevertheless complains that the Court failed to consider various other factors, including that he was not the stabber,[4] was not a gang member and served "only" 11 months incarceration. Relying on these claimed omissions, Singh argues that his "actions do not amount to a particularly serious crime *under the factual circumstances involved*.... [T]he facts in their totality do not rise to the level of a particularly serious crime." *Id.* (emphasis added)

■ This is an argument that the BIA came to an "unwise yet lawful conclusion," not an argument that "allege[s] constitutional or statutory error in the removal process." *Gutierrez–Chavez*, 298 F.3d at 828–830. Singh does not contend either that the INS failed to exercise its discretion in accordance with federal law or that it did so in an unconstitutional manner. He merely distinguishes his case from other BIA cases, on their facts. Thus, what he "simply seek[s is] to change the discretionary result reached by the INS," *Gutierrez–Chavez*, 298 F.3d at 830. As such, his petition was "not within the scope of § 2241 and [was properly] denied." *Id.*[5]

## II. The Panel Has Jurisdiction over Singh's Convention Claim

### A. Background

The United Nations drafted the Convention "in an effort to 'make effective the struggle against torture and other cruel, inhuman or degrading treatment or punishment throughout the world.'" *Cornejo–Barreto v. Seifert*, 218 F.3d 1004, 1010–1011 (9th Cir.2000) (quoting the Preamble to the Convention). Article 3 of the Convention "prohibits ratifying states from returning or extraditing individuals who are likely to face torture." *Id.* at 1011. The United States became a full party to the Convention in November 1994. *Id.* (citing U.N. Doc. 571 Leg. SER. E/13.IV.9 (1995)).

### B. The Government's Jurisdictional Arguments

The Government argues that the law implementing Article 3 of the Convention—the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA" or "the Act"), Pub. L. No. 105–277, div. G, Title XXII, § 2242, 112 Stat. 2681–822 (Oct 21, 1998) (codified as Note to 8 U.S.C. § 1231)—does not allow for habeas jurisdiction over Convention claims because it "expressly precludes judicial review of such claims except by way of a statutory petition for review." Alternatively, the Government argues that even if federal courts may review some Convention claims, Singh's habeas claim is not justiciable because it does not raise a "pure question of law" (quoting *INS v. St. Cyr*, 533 U.S. 289, 300, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)).

---

4. This contention is erroneous. The BIA specifically noted that Singh "was not responsible for stabbing the victim...."

5. Because we conclude that we lack jurisdiction to review it, we do not reach the merits of Singh's contention that the BIA erred in denying his request for the withholding of removal.

## C. FARRA Does Not Preclude Habeas Jurisdiction over Convention Claims

FARRA provides that it is "the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture...." FARRA § 2242(a). FARRA also directs "the heads of the appropriate agencies" to promulgate regulations giving effect to the Act. FARRA § 2242(b). Under the implementing regulations of the Justice Department that apply to this case, the IJ and BIA could not lawfully have ordered that Singh be deported if they had determined that "more likely than not [he would] ... be tortured in the country of removal." 8 C.F.R. § 208.16(c)(4).

The Government argues that in passing FARRA, Congress simultaneously implemented the Convention and stripped the courts of habeas jurisdiction over Convention claims. The Government bases this argument on the following language in FARRA: "[N]othing in this section shall be construed as providing any court jurisdiction to consider or review claims under the Convention or this section ... except as part of the review of a final order of removal...." FARRA § 2242(b). Because Singh raises his Convention claim in a habeas petition and not in a petition for review, the Government argues, § 2242(b) divests the panel of jurisdiction.

This argument is foreclosed by Supreme Court and Ninth Circuit precedent. In *St. Cyr*, the Supreme Court held that "Congress must articulate [a] specific and unambiguous statutory directive to effect a repeal" of habeas jurisdiction. 533 U.S. at 299, 121 S.Ct. 2271. In *Cornejo–Barreto*, the Ninth Circuit held that § 2242(b) does not include the "express command" that is

required to limit federal habeas corpus. 218 F.3d at 1016 n. 13 (quoting *Magana–Pizano v. INS*, 200 F.3d 603, 609 (9th Cir.1999)). In *Cornejo–Barreto*, however, the court did not decide the merits of a habeas claim; the alien had not committed a crime in the United States and Mexico was seeking his extradition to face criminal charges filed against him there. After reviewing the applicable extradition procedures, the court concluded that under the Administrative Procedure Act the alien could present a claim to the Secretary of State that extradition would violate his rights under the Convention, in which case the Secretary of State would have to grant or deny that claim with finality before the alien could prosecute a habeas petition.

Other circuits have agreed with *Cornejo–Barreto* that the Convention does not effect a repeal of habeas jurisdiction. *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 221 (3d Cir.2003); *Saint Fort v. Ashcroft*, 329 F.3d 191, 202 (1st Cir.2003); *Wang v. Ashcroft*, 320 F.3d 130, 141 (2d Cir.2003) (citing *Cornejo–Barreto*).

## D. Singh's Convention Claim Falls within the Scope of Habeas Jurisdiction

As support for its contention that the Court lacks jurisdiction over Singh's Convention claim because it does not raise a "pure question of law," the Government relies primarily on *Gutierrez–Chavez, supra*, and *Sol v. INS*, 274 F.3d 648 (2d Cir.2001). *Gutierrez–Chavez* does not provide support for the Government's argument. That case did not involve claims brought under the Convention, and the court specifically noted that aliens may file habeas petitions that allege constitutional or statutory error in the removal process. 298 F.3d at 829. *Sol*, too, did not involve Convention claims. Moreover, other courts have rejected the Government's ar-

gument that only "purely legal questions of statutory interpretation" permit the exercise of habeas jurisdiction. *Wang,* 320 F.3d at 142–43; *Ogbudimkpa,* 342 F.3d 207, 222 ("Because Ogbudimka alleges misapplication of a legal principle to undisputed facts of record this case falls within the scope of *habeas* jurisdiction granted to the District Court by 28 U.S.C. § 2241.").[6] We agree with those rulings.

■ The petitioner in *Wang,* like Singh, challenged the BIA's application of the Convention and FARRA to the facts of his case. 320 F.3d at 143. The Second Circuit held that under *St. Cyr* it did have jurisdiction over Wang's claim, stating: "The [Supreme] Court [in *St. Cyr*] explained that 'at the absolute minimum, the Suspension Clause protects the writ as it existed in 1789 [citation omitted], and at that time the use of the writ "encompassed detentions based on errors of law, *including the erroneous application or interpretation of statutes.*" '" *Wang,* 320 F.3d at 142–143 (quoting *St. Cyr,* 533 U.S. at 301, 302, 121 S.Ct. 2271) (emphasis added in *Wang*). Thus, "because the Constitution requires habeas review to extend to claims of erroneous *application* or interpretation of statutes," the Second Circuit held that it did have jurisdiction over Wang's claim that the BIA erred in its application of the law to the facts of his case. *Id.* at 143.

This Court adopts the Second Circuit's well-reasoned analysis and, consistent with the First and Third Circuits as well, holds that it does have jurisdiction over Singh's Convention claim, even if that claim does not raise a "purely legal question of statutory interpretation."

## III. Singh's Convention Claim Fails on the Merits

### A. Standard of Review

■ Factual findings underlying the BIA's determination that Singh was not eligible for relief under the Convention are reviewed for substantial evidence. *Zheng,* 332 F.3d at 1193. Thus, the BIA's findings must be affirmed if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). The court will reverse only if the evidence is so compelling that no reasonable fact finder could have failed to find the requisite likelihood of torture. *See Singh v. Ashcroft,* 301 F.3d 1109, 1111 (9th Cir.2002) (applying the substantial evidence standard in the asylum context). The BIA's interpretation of purely legal questions is reviewed *de novo,* although "[t]he BIA's interpretations and applications of immigration law . . . are subject to established principles of deference." *Zheng,* 332 F.3d at 1193 (citation and internal quotation marks omitted).

The IJ found the testimony of Singh, his father and his brother to be credible. Because the BIA did not make any contrary findings, the facts given by those witnesses and the reasonable inferences to be drawn from those facts are taken as true. *Zheng,* 332 F.3d at 1189 n. 4.

---

**6.** In *Saint Fort,* because the alien's claim was based on the *ex post facto* clause of the Constitution, the First Circuit declined to address the question of whether " 'pure issue[s] of law' may be raised in habeas." 329 F.3d at 203. But the court noted that "[i]n *St. Cyr,* the Supreme Court referred to the use of habeas to correct 'errors of law, including the erroneous application . . . of statutes.' 533 U.S. at 302, 121 S.Ct. 2271 . . . The Second Circuit in *Wang* has suggested that habeas jurisdiction encompasses at least the situation in which what is at stake is the BIA's application of legal principles to undisputed fact." *Id.*

## B. Singh's Convention Claim Lacks Merit

Under INS regulations, Singh must prove that "it is more likely than not that he ... would be tortured if removed" to India. *Al–Saher v. INS,* 268 F.3d 1143, 1147 (9th Cir.2001) (alteration in original) (quoting 8 C.F.R. § 208.16(c)(2)). "In assessing whether it is more likely than not that[Singh] would be tortured" in India, "all evidence relevant to the possibility of future torture" must be considered. 8 C.F.R. § 208.16(c)(3). This includes, but is not limited to, "[e]vidence of past torture inflicted upon [Singh]," "[e]vidence that [Singh] could relocate to a part of [India] where he ... is not likely to be tortured," "[e]vidence of gross, flagrant or mass violations of human rights within [India]," and "[o]ther relevant information regarding conditions in the country of removal." *Id.*

Singh argues that he is likely to be tortured by members of his mother's family who are police officers in India and who have threatened Singh's father. Although there is no evidence that Singh has been tortured in the past or that his mother's family members have threatened him (as opposed to his father), Singh's brother Sadnan did testify that the family members who have threatened Singh's father associate Singh with his father and believe Singh has taken his father's side.

As support for rejecting Singh's Convention claim, however, the BIA relied primarily on evidence that Singh could settle in a part of India where he is not likely to be tortured. 8 C.F.R. § 208.16(c)(3)(ii). Indeed, Singh's father was able to return to India and safely marry again—the very act that broke his promise to his first wife and angered his first wife's family—because he stayed 150 miles away from his home town.

 In light of this evidence, taken together with the lack of any direct threat against Singh personally, the BIA did not err in concluding that Singh failed to meet his burden of showing that he will more likely than not be tortured if he returns to India. Singh's evidence does not compel a contrary finding and the BIA's decision is supported by substantial evidence.

### CONCLUSION

The district court did not have jurisdiction over Singh's habeas claim that his underlying crime was not "particularly serious." The district court did have jurisdiction over Singh's Convention claim and correctly denied that claim.

**AFFIRMED.**